NATIONAL INDEMNITY
COMPANY, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY, et al., Defendants.

Civ. A. No. HAR 92–3694.

United States District Court,
D. Maryland.

Sept. 22, 1993.

Donna Suzanne Brennan, Rockville, MD, for plaintiff.

Charles E. Gallagher, Lanham, MD, for defendant Penske.

Peter F. Axelrad, M. Elizabeth Medaglia, Jackson & Campbell, Rockville, MD, for defendant National Union Fire Ins. Co.

Bruce L. Corriveau, Fedder and Garten, P.A., Baltimore, MD, for defendant Choice TV Rental.

## MEMORANDUM OPINION

HARGROVE, District Judge.

On April 20, 1990, because one of its own trucks was being repaired, Choice TV Rental, Inc. ("Choice TV") rented from Penske Truck Leasing Corporation ("Penske") a

1980 GMC truck. Under the "Commercial Liability Policy" which it had purchased from National Indemnity Company ("NIC"), Choice TV was insured against liability arising out of its use of Penske's truck. *See* NIC Policy No. AP273808, § I(C)(3) (providing coverage for any "auto" not owned by Choice TV, and used with the permission of its owner as a temporary substitute for a covered "auto" out of service because of its breakdown, repair, servicing, "loss," or destruction). Despite its coverage under the NIC policy, upon leasing the truck, Choice TV chose to purchase additional liability insurance from Penske. Specifically, Choice TV selected option "*1" under the "Liability Insurance" section of Penske's rental agreement form, which states:

> Lessor provides liability coverage for customer, ... in accordance with standard provisions of a Basic Automobile Liability Insurance Policy as required in the jurisdiction which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising from use of Vehicle as permitted by the Agreement, with limits as follows: IF A TRUCK, $10,000 each person, $20,000 each accident for bodily injury, including death and $5,000 each accident for property damage or with limits of liability up to the requirements of the Financial Responsibility Law or other applicable statute of the state or municipality in which the accident occurred, whichever is greater.

Penske Rental Agreement, ¶ 7. In order to provide this option of liability coverage for its customers, Penske had purchased a "Motor Carriers Policy of Insurance" from National Union Fire Insurance Company ("NUFIC").

On April 23, 1990, Michael Bullock, a Choice TV employee, while driving the truck

leased from Penske, collided with and injured a Nathaniel Moore. As a result, Mr. Moore initiated a lawsuit in the District of Columbia's Superior Court, C.A. 91–12929, and after binding arbitration, Choice TV was deemed liable to Mr. Moore in the amount of $91,663.38. The instant declaratory judgment action embodies NIC's attempt to force NUFIC to share, on a *pro rata* basis, reimbursement of that amount of the arbitration award in excess of the $25,000 that NUFIC has already paid.[1]

Presently before the Court are cross-motions for summary judgment filed by NIC and NUFIC, respectively; additionally, Penske has submitted a motion for summary judgment, which, by in large, adopts NUFIC's position.[2] The Court has reviewed the parties' memoranda and exhibits attached thereto, and will resolve the motions without convening a hearing. Local Rule 105(6) (D.Md.1992). For the reasons articulated more fully herein, NIC alone must compensate Choice TV for that amount of the arbitration award against it which exceeds $25,000.

### Undisputed Facts

1. In consideration of premiums paid, NIC agreed to insure Choice TV against liability up to a limit of $500,000. NIC expressly provided that

> [f]or any covered "auto" you own, this Coverage Form provides primary insurance: For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

NIC Policy No. AP273808, § IV(B)(5)(a).

■ 2. Because Choice TV had purchased "other collectible insurance" from Penske,

---

1. Under ¶ 7 of its Rental Agreement, Penske warranted that its coverage was "primary as respects any other insurance available to customer or any Authorized Operator as defined in this Agreement." There is no dispute that as Penske's insurer, NUFIC was obligated to cover the first $25,000 of Choice TV's liability.

2. Also before the Court is Choice TV's motion to dismiss for lack of subject matter jurisdiction. Choice TV contends that the amount in controversy criterion of 28 U.S.C. § 1332(a) is not

satisfied. "In a declaratory judgment action, the amount in controversy is measured by the value of the object of the litigation and dismissal is appropriate only where it appears to a legal certainty that the jurisdictional amount is not met." *Moore v. Atchison, T. & S.F.R. Co.,* 699 F.2d 507 (10th Cir.1983). This Court has subject matter jurisdiction to declare which insurance company or companies are responsible for $66,663.38 of Choice TV's liability. Therefore, Choice TV's motion to dismiss will be denied.

and because Choice TV did not own the truck which Mr. Bullock was driving at the time of the accident, NIC's policy provides $500,000 of "excess" or "secondary" coverage.

3. Pursuant to the Rental Agreement between Penske and Choice TV, and as quoted above, Penske agreed to provide primary liability coverage to Choice TV. *See* Penske Rental Agreement, ¶ 7.

4. The accident between Mr. Bullock and Mr. Moore occurred in the District of Columbia. Under the District of Columbia's "Financial Responsibility law," Penske was required, at a minimum, to provide liability coverage of $25,000. D.C.Code for Third Party Personal Liability, Title 35, § 2106(c). Thus, under its contractual agreement with Choice TV, Penske limited its coverage to $25,000.[3]

5. In consideration of premiums paid, NUFIC agreed to insure Penske against liability up to a limit of one million dollars. NUFIC expressly stated that its coverage was "primary."[4] That portion of NUFIC's insurance form addressing "excess" coverage was left blank.[5]

6. Under § II(A)(1) of NUFIC's policy, "WHO IS AN INSURED," in addition to Penske, NUFIC insured "anyone else while using with [Penske's] permission a covered 'auto' [that Penske] own[ed], hire[d], or borrow[ed]...." Endorsement 13 to the NUFIC policy amended § II(A)(1)'s "permissive user" category:

### LESSEES AS PRIMARY INSUREDS

It is agreed, that Section II—Liability Coverage, A.1., Who is Insured, provision of the policy is amended to include both lessees and rentees of covered autos as insureds, but only to the extent and for the limits of liability agreed to under contractual agreement with the named insured.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than listed above.

NUFIC Policy No. RMBA 145–99–12, Endorsement 13, (emphasis added).

### *Discussion*

Focusing its litigious energies on § II(A)(1) of the insurance policy which NUFIC issued to Penske, NIC contends that Choice TV, as a "permissive user" of a Penske truck, is entitled to one million dollars of coverage. With respect to Endorsement 13 which, on its face, adds "lessees and rentees" to the list of insureds but simultaneously limits their coverage to the amount agreed to in the rental agreement, NIC argues that the endorsement merely

modifies the basic coverage of the policy, which provides $1 million in primary liability coverage for *all* permissive users of an owned vehicle, to indicate that lessees of vehicles from the named insured will receive *primary* coverage under the policy only as agreed under the contractual agreement with Penske.... Endorsement 13 does not affect the policy limit available to a permissive user of an owned vehicle, but merely provides how the policy limit will be treated, with only a portion of that limit being treated as primary coverage. The remainder of that coverage up to $1 million dollars, under the policy issued by National Union, is excess for any permissive user/lessee of a vehicle provided by Penske.

Memorandum in Support of NIC's Motion for Summary Judgment at 7–8 (emphasis in

---

3. "Lessor provides liability coverage for customer, ... against liability for bodily injury, including death, ... with limits as follows: IF A TRUCK, $10,000 each person, $20,000 each accident for bodily injury, including death and $5,000 ... or with limits of liability up to the requirements of the Financial Responsibility Law or other applicable statute of the state or municipality in which the accident occurred, whichever is greater." Rental Agreement, ¶ 7 (emphasis added).

4. "This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident."

5. "This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident."

original).[6]

NIC too cavalierly assumes that Choice TV, as Penske's lessee, constituted a "permissive user" of Penske's truck and therefore, qualified as an "insured" under § II(A)(1) of the NUFIC policy. Reviewed without reference to Endorsement 13, § II(A)(1) is, at best, ambiguous with respect to NUFIC's coverage of Penske's lessees. However, an insurance policy, including its endorsements, should be read and considered as a whole. *Mills v. Judd,* 256 Md. 144, 147, 259 A.2d 267 (1969); *Erie Ins. Exchange v. Gosnell,* 246 Md. 724, 731, 230 A.2d 467 (1967). Where the provisions of an endorsement conflict or are inconsistent with the main policy, the endorsement will control to the extent of the conflict or inconsistency. *Truck Ins. Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 436, 418 A.2d 1187 (1980); J. Appleman, 13A *Insurance Law and Practice,* § 7538 at 165 (1976). Endorsement 13 unambiguously states that § II(A)(1) "is amended," that is to say "changed," "to include lessees and rentees of covered autos as insureds." If, as NIC argues, § II(A)(1) originally considered Penske's lessees as permissive users, Endorsement 13 would have been unnecessary. A straight-forward reading of the NUFIC policy suggests that Penske's rentees constitute a category of drivers distinct from those initially considered "permissive users" under § II(A)(1).

This interpretation also squares with common sense. NUFIC recognized that Penske was in the business of leasing trucks to third parties over whom neither NUFIC nor Penske could exercise control. In contrast to Penske's employees who NUFIC could reasonably anticipate operating Penske trucks, and whose driving skills and records Penske could screen, rentees or lessees posed unknown and therefore, uncontrollable safety risks. It is not surprising that an insurance company would distinguish between two identifiable risk pools and offer a lower level of coverage for (or demand a higher premium from) the riskier group.

Even were the Court to read Endorsement 13 as a clarification of, rather than an amendment to, § II(A)(1), and therefore deem rentees and lessees members of § II(A)(1)'s "permissive user" class, Endorsement 13 placed a specific limitation on the coverage available to them. Endorsement 13 makes clear that if the insured is a rentee or lessee, liability coverage, which for other permissive users extended to one million dollars, extended only to the greater of $20,000 or "the requirements of the Financial Responsibility law or other applicable statute of the state or municipality in which the accident occurred."

Similarly, the NUFIC policy unambiguously provides primary coverage. While NUFIC's form contained a space for "excess" coverage, when Penske purchased the coverage, that space was left blank. As sophisticated businesses familiar with the insurance industry, NUFIC and Penske could have arranged to divide one million dollars of liability coverage into $25,000 of primary coverage and $975,000 of secondary coverage; however, contrary to NIC's assertion, they did not, and the Court sees no reason, in the absence of explicit contractual text so indicating, to infer that NUFIC agreed to provide Penske's lessees with $975,000 of excess liability coverage.

### Conclusion

For the foregoing reasons, NIC's motion for summary judgment will be denied. NUFIC's motion for summary judgment, which Penske joined in the main,[7] will be granted. In accordance with this Memorandum Opinion, it will be so ordered.

### ORDER

This twenty-second (22nd) day of September, 1993, it IS, by the United States District

---

**6.** The pages of NIC's brief are misnumbered. While the above quote is found on pages numbered 7 and 8, chronologically, it can be located on the ninth and tenth pages of NIC's brief.

**7.** Penske also urged this Court to declare that the indemnification provision of its Rental Agreement with Choice TV is legally valid and legally enforceable. Because the Court has determined that neither Penske nor NUFIC owes Choice TV any money in excess of the $25,000 already disbursed, it need not rule on the validity of the indemnity clause of the Rental Agreement.

Court for the District of Maryland, hereby ORDERED:

1. That Plaintiff National Indemnity Company's Motion for Summary Judgment BE, and the same hereby IS, DENIED.

2. That Defendant National Union Fire Insurance Company's Motion for Summary Judgment BE, and the same hereby IS, GRANTED.

3. That Defendant Choice TV Rental, Inc.'s Motion to Dismiss BE, and the same hereby IS, DENIED.

4. That Defendant National Union Fire Insurance Company's Policy No. RMBA 145–99–12 provides coverage in the amount of $25,000 to Choice TV, Inc. for its liability in connection with civil action *Nathaniel Moore v. Michael Bullock, et al.,* D.C. Superior Court, C.A. 91–CA12929.

5. That Plaintiff National Indemnity Company's Policy No. AP273808 provides coverage in excess of $25,000 up to a limit of $500,000 to Choice TV, Inc. for its liability in connection with civil action *Nathaniel Moore v. Michael Bullock, et al.,* D.C. Superior Court, C.A. 91–CA12929.

6. That the Clerk of the Court CLOSE this case.

7. That the Clerk of the Court MAIL copies of this order and the attached Memorandum Opinion to all parties of record.